En el Tribunal Supremo de Puerto Rico

| METROPOLITAN MARBLE CORP.                                           Recurrido          .V  BERNARDO PICHARDO VICIOSO H/N/C EUROAMERICAN DECOR & TILES, INC.           Recurrente | Certiorari  TSPR98-63 |
| --- | --- |

Número del Caso: CC-97-337

Abogados Parte Recurrente: LCDO. RIGOBERTO SANTIAGO CALDERON

Abogados Parte Recurrida: LCDO. DAVID LOPEZ PUMAREJO

Abogados Parte Interventora: LCDO. ORLANDO MARTINEZ SOTOMAYOR

Tribunal de Instancia: Superior, Sub-Sección de Distrito, Sala de Carolina

Juez del Tribunal de Primera Instancia: Hon. Lydia E. Couvertier

Tribunal de circuito de Apelaciones: Circuito Regional VII

Juez Ponente: Hon. Antonio J. Negroni Cintrón

Fecha: 6/29/1998

Materia: Cobro de Dinero

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


METROPOLITAN MARBLE CORP.
                          Demandante-Recurrido

        vs.

BERNARDO PICHARDO VICIOSO          CC-97-337          CERTIORARI
H/N/C/ EUROAMERICAN
DECOR & TILES, INC.
      Demandados-Recurrentes

JOSÉ A. MÉNDEZ ALBARRÁN
      Interventor-Recurrido


PER CURIAM


San Juan, Puerto Rico, a 29 de mayo de 1998.


El 3 de abril de 1989, Metropolitan Marble Corporation (en adelante, "Metropolitan") instó demanda en cobro de dinero contra Bernardo Pichardo Vicioso y la corporación Euroamerican Decor & Tiles. Metropolitan alegó haberle vendido y entregado material de construcción a Pichardo, quien, aun después de haber sido requerido varias veces, no le había pagado a Metropolitan la suma adeudada, ascendente a $5,195.92. Ni en la demanda, ni durante el trámite del caso, se incluyó ni se emplazó a Soraya Hernández Lecusay, entonces esposa de Pichardo, ni a la sociedad de gananciales integrada por ambos. La señora Hernández nunca fue advertida de que la acción del caso de autos le afectaba personalmente.

El tribunal *a quo* dictó sentencia el 11 de diciembre de 1990 a favor de Metropolitan, la cual fue presentada el 4 de enero de 1991 y anotada en el Registro de la Propiedad, en el asiento correspondiente al apartamento 1D del Condominio Club Costamarina en Carolina, Puerto Rico. El demandado no pagó.

Poco después, Soraya Hernández Lecusay y Bernardo Pichardo Vicioso se divorciaron por consentimiento mutuo, mediante sentencia dictada el 12 de abril de 1991. En la estipulación aprobada por el Tribunal para la liquidación de la sociedad legal de gananciales, se acordó el traspaso total a Pichardo de la titularidad y el pleno dominio del referido apartamento 1D del Condominio Club Costamarina, propiedad de ambos, valorado en aproximadamente $65,000.00. A cambio del traspaso aludido, Pichardo le reconocería a Hernández un crédito de $15,670.00, el cual sería pagado dentro de un término de 7 años. Se acordó otorgar la escritura de división de bienes gananciales dentro de 30 días, pero ello no se hizo.

Así las cosas, mediante sentencia enmendada, *nunc pro tunc*, dictada en 24 de octubre de 1995, el Tribunal de Primera Instancia hizo extensiva a Euroamerican Decor & Tiles, Inc. la sentencia antes dictada contra Pichardo y los condenó a ambos a pagarle solidariamente a Metropolitan $5,195.92 de principal y además, intereses desde la radicación de la demanda, costas y $500.00 de honorarios. Ello, por haber concluido, al descorrer el velo corporativo,

que Pichardo y Euroamerican estaban confundidos en una misma persona.

El 6 de diciembre de 1995, el tribunal ordenó que se vendiera en pública subasta el interés que poseyera Pichardo sobre el apartamento 1D del Condominio Club Costamarina, para ejecutar la sentencia pendiente en su contra.

No obstante, el edicto de subasta que se publicó anunciaba que en ésta se vendería **la propiedad** descrita, no el interés  que el demandado poseía en ésta, como había ordenado el tribunal.  Por consiguiente, no se mencionaba en el edicto el porcentaje de participación del demandado en el susodicho inmueble.  Tampoco se citó ni se avisó de la subasta a Soraya Hernández, quien figuraba todavía en el Registro de la Propiedad como copropietaria del inmueble a subastarse.

La subasta se celebró el 23 de febrero de 1996.  Del acta surge que el Alguacil encargado le adjudicó **la propiedad** a José A. Méndez Albarrán.

El 18 de marzo de 1996, Pichardo solicitó la anulación de la subasta, por el fundamento de que la propiedad vendida les pertenecía a él y a su ex-esposa y que a ésta última no se le había incluido como parte en el pleito ni tampoco se le notificó la ejecución de su interés propietario.  Planteó que lo único que podía subastarse era el interés que él poseía en el inmueble y no la propiedad en sí.  Sostuvo el demandado, además, que no había base legal para desalojar a los ocupantes del apartamento dentro del término de 20 días según

dispuso el tribunal[1], puesto que en derecho, un licitador sólo podía haber adquirido el 50% de participación en el inmueble.

Así las cosas, el 22 de abril de 1996, el foro de instancia resolvió que sólo procedía subastar el interés de Pichardo sobre el apartamento. Dicho tribunal determinó que hubo error en el edicto de subasta y declaró sin lugar una solicitud para desalojar al demandado del apartamento. Además, señaló vista para discutir la posible anulación de la subasta y evaluó los memoranda escritos de las partes.

Posteriormente, mediante resolución del 24 de julio de 1996, el tribunal de instancia validó el edicto y la subasta, con todas sus consecuencias legales. El 6 de agosto de 1996, Albarrán solicitó nuevamente el desalojo de la propiedad y el Tribunal le Primera Instancia, mediante orden del 23 de agosto de 1996, concedió dicho pedido.

Inconforme, el 27 de agosto de 1996, el demandado pidió reconsideración de la resolución que convalidaba la subasta. Mediante orden del 30 de agosto de 1996, el foro de instancia determinó que Soraya Hernández no tenía interés alguno en la propiedad subastada y que como ésta no era ya ganancial, el interés del demandado sobre dicha propiedad era la totalidad. Ello, a pesar de que la escritura de división de bienes gananciales nunca se había otorgado.

---

[1]El Mandamiento de Ejecución, a la página segunda, ordena:

> El alguacil procederá a poner al licitador victorioso en posesión física de la propiedad, mediante el lanzamiento de los ocupantes dentro de los veinte días de la fecha de la subasta.

El demandado acudió, entonces, oportunamente, ante el Tribunal de Circuito de Apelaciones, en *certiorari.* Dicho foro confirmó, mediante resolución del 7 de mayo de 1997, la resolución recurrida del Tribunal de Instancia.

Insatisfecho con la resolución dictada por el Tribunal de Circuito, Pichardo recurrió oportunamente ante nos, en *certiorari* presentado el 19 de junio de 1997. Planteó, en lo pertinente, la comisión de los siguientes errores:

I-  Erró el Tribunal de Instancia al convalidar el edicto y por tanto la subasta que se llevara a cabo, siendo distinto [sic] a la orden de ejecución de sentencia y al mandamiento que emitiera el Tribunal.

II- . . .

III- Erró el Tribunal al adjudicar la totalidad del inmueble subastado a favor del licitador victorioso, a pesar de que la orden y mandamiento del Tribunal limitaba la subasta a sola [sic] la participación del demandado.

El 15 de agosto de 1997, le concedimos a la parte demandante-recurrida, Metropolitan Marble, Corp., un término de 30 días para mostrar causa por la cual no se debiera expedir el *certiorari* solicitado y revocar la resolución del Tribunal de Circuito de Apelaciones. Con el beneficio de la comparecencia de dicha parte, nos encontramos en posición de resolver.

Por entender que, en esencia, los dos señalamientos de error están interrelacionados, procederemos a discutirlos en conjunto.

I

La Regla 51.5 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III (1997), que dispone sobre la ejecución de sentencia, señala, en lo pertinente:

> **51.5 Forma de hacerla efectiva**
> Si el mandamiento de ejecución fuere contra la propiedad del deudor declarado tal en la sentencia, requerirá del alguacil que haga efectiva la sentencia, con intereses, **en los bienes de dicho deudor**. (Enfasis nuestro).

Conforme a lo dispuesto en la Regla 51.5 aludida, debemos determinar, para comenzar, si el inmueble en cuestión aquí constituía un bien del deudor. Surge de un examen de los hechos de este caso que el apartamento en controversia fue adquirido vigente el matrimonio de Hernández y Pichardo. También surge claramente que la demanda de Metropolitan se instó estando aún vigente el matrimonio Pichardo-Hernández; y que la sentencia original en el referido pleito de cobro de dinero recayó cuando todavía la pareja no se había divorciado. Al dictarse dicha sentencia, pues, el inmueble era, presuntamente, un bien ganancial. Artículo 1307 del Código Civil, 31 L.P.R.A. § 3647 (1997).

Por otro lado, conforme los hechos probados, es claro que, a la fecha de la subasta, Pichardo no había adquirido aún la totalidad del inmueble. Según la estipulación

aprobada por el foro de instancia para la liquidación de la sociedad de gananciales Pichardo-Hernández, la validez del traspaso del apartamento en controversia estaba sujeta a que se otorgara la correspondiente escritura pública, la cual nunca se otorgó. Es por ello que, al momento de la ejecución de la sentencia a favor de Metropolitan, como no se había perfeccionado la división de bienes entre Pichardo y su ex-esposa, el apartamento en cuestión pertenecía a la comunidad de bienes que existía entre los ex-cónyuges. No pertenecía a Pichardo sólamente. Aunque las partes en el presente caso ya estaban divorciadas, al extinguirse la sociedad de gananciales entre ellos, surgió una comunidad de bienes ordinaria[2], regida por los Arts. 325 y subsiguientes del Código Civil de Puerto Rico[3]. La comunidad de bienes entre el demandado y su esposa subsiste hasta el presente, por no haber sido liquidada. Metropolitan procuró ejecutar la sentencia a su favor contra un inmueble que pertenecía a la comunidad de bienes aludida.

En vista de lo anterior, es claro que el Tribunal de Circuito de Apelaciones erró al resolver que la subasta en cuestión se hizo correctamente, por entender que el demandado tenía la titularidad completa sobre la propiedad. Pichardo sólo tenía un interés del 50% respecto al inmueble en

---

[2]Según lo pautado por este Tribunal en García v. Montero Saldaña, 107 D.P.R. 319 (1978). Sobre esto véase, también, Soto López v. Colón, Op. de 22 de mayo de 1997, 143 D.P.R.___ (1997), 97 JTS 74.

[3]31 L.P.R.A. §§ 1271 et seq. (1993).

cuestión y sólo ese interés era ejecutable, como había ordenado originalmente el foro de instancia.

II

Debe notarse también que, al momento de celebrarse la subasta, el apartamento objeto de venta aparecía inscrito en el Registro de la Propiedad a nombre de Pichardo y de Hernández Lecusay, quienes todavía eran los titulares de dicho inmueble. Es norma reiterada el principio de publicidad de las constancias del Registro, respecto a las cuales hay que imputar conocimiento a quien ejecuta una sentencia contra un inmueble[4]. Siendo la señora Hernández una de las titulares registrales del apartamento en este caso, era parte indispensable en el procedimiento de subasta contra dicho inmueble, por lo cual debió haber sido notificada con arreglo a la ley. Como hemos indicado ya, Hernández no sólo aparecía como titular registral del inmueble, sino que era condueña del mismo, como comunera, al momento de la subasta. Tenía, pues, derecho a que se le notificara de la ejecución que se procuraba. Véase, Cruz Viera v. Registrador, 118 D.P.R. 911 (1987). La ausencia de dicha notificación acarrea la nulidad del procedimiento de subasta. Es insubsanable la falta de notificación a la co-dueña, quien estaba fuera del pleito y quien tenía que ser incluida en el mismo, para

---

[4]Artículos 23, 28, 33, 53 de la Ley Hipotecaria de 1979, 30 L.P.R.A. §§ 2101, 2106, 2153, 2256 (1993).

proteger sus intereses y conceder un remedio completo. Ella era una parte indispensable en el procedimiento de ejecución. Era imprescindible incluirla en dicho procedimiento como persona con un interés común en la cuestión litigiosa, para evitar que pudiera ser privada de su libertad o propiedad sin el debido proceso de ley, conforme lo dispone nuestra Regla 16.1 de Procedimiento Civil, 32 L.P.R.A. App. III (1997). Carrero Suárez v. Sánchez López, 103 D.P.R. 77 (1974).

De este modo, no sólo se le protege de los efectos perjudiciales que pudiera traer el resolver el caso sin su presencia, sino que, además, se evita la multiplicidad de pleitos. Cepeda Torres v. García Ortiz, opinión de 12 de febrero de 1993, 132 D.P.R. ____,93 JTS 20; Martínez Soria v. Tribunal Superior, sentencia de 1 de noviembre de 1995, 139 D.P.R. ___, 95 JTS 143. Véase, también, Vencedor Dev. Corp. v. Aut. de Carreteras, sentencia de 22 de junio de 1994, 136 D.P.R. ___,94 JTS 95; Hernández Agosto v. López Nieves, 114 DPR 601 (1983).

III

Pese a todo lo anteriormente discutido, la parte demandante levanta la cuestión del *standing* del demandado para solicitar la anulación de la subasta, al aducir que la señora Hernández no compareció ni solicitó remedio alguno contra aquélla. Argumenta, además, que el error cometido en este caso no representó perjuicio para nadie, "incluyendo al deudor, cuyo interés sobre la propiedad fue vendido". Dicha

parte intenta salvar la validez de la subasta aduciendo que la omisión al notificar y los errores que el demandado señala se cometieron al publicar los edictos, no fueron graves.

La demandante basa su argumentación en el caso de Dapena Quiñones v. Vda. de Del Valle, 109 D.P.R. 138 (1979), en el cual este Tribunal decidió que el defecto de forma en el edicto de subasta (señalar que ésta se celebraría en el Centro Judicial de San Juan, sin especificar que sería en la oficina del Alguacil) era intrascendente.  Señalamos en dicha ocasión:

> El Art. 251, inciso 2do, del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 1132[5] que gobierna este caso dispone que el edicto anunciando la subasta expresará, entre otros particulares el "lugar en que haya de celebrarse la venta", y la fiel adhesión al precepto debe guiar la buena práctica profesional.  Sin embargo, en la estructura del edicto como en muchos otros instrumentos del derecho positivo que se desvían de la norma reglada, la deficiencia puede constituir un defecto substancial que enerva el documento hasta la nulidad, o uno de forma sin consecuencia en la situación factual en que se produce. Dapena Quiñones v. Vda. de Del Valle, 109 D.P.R. 138 (1979).

El caso de autos es distinguible del citado.  En el caso que nos ocupa, contrario a Dapena, supra, estamos ante un error del primer tipo.  No se trata, como argumenta la parte demandante-recurrente, de un mero defecto de forma que no afecte la validez de la subasta realizada.  No puede negarse que fue omisión grave el no notificar de la celebración de la

---

[5]Es menester señalar que el citado Artículo 251 del Código de Enjuiciamiento Civil, que quedó derogado mediante las Reglas de Procedimiento Civil de 1979, fue sustituido en lo esencial por la vigente Regla 58.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III (1997).

subasta a una de las partes con titularidad sobre la propiedad al ser vendida. Además, fue un "defecto sustancial" que no se indicara en el edicto que lo que se vendería sería el interés o participación del demandado en el inmueble, ni el porcentaje del interés de que se trataba.

IV

Por todo lo antes expuesto, resulta claro que los procedimientos de venta judicial celebrados en este caso y en consecuencia las resoluciones emitidas por el Tribunal de Primera Instancia posteriores a la subasta, son nulos. Erró el Tribunal de Circuito de Apelaciones al confirmarlos. En consecuencia, se dictará sentencia para expedir el auto de *certiorari* solicitado, revocar la Resolución del Tribunal de Circuito de Apelaciones y declarar nula la subasta celebrada y el desalojo realizado como consecuencia de ésta.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

METROPOLITAN MARBLE CORP.
                              Demandante-Recurrido

           vs.

BERNARDO PICHARDO VICIOSO                CC-97-337        CERTIORARI
H/N/C/ EUROAMERICAN
DECOR & TILES, INC.
      Demandados-Recurrentes

JOSÉ A. MÉNDEZ ALBARRÁN
      Interventor-Recurrido


                              SENTENCIA


          San Juan, Puerto Rico, a 29 de mayo de 1998.


          Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte integrante de la presente, se dicta sentencia para expedir el auto de *certiorari* solicitado, se revoca la Resolución del Tribunal de Circuito de Apelaciones y se declara nula la subasta celebrada y el desalojo realizado como consecuencia de ésta.

          Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.  Los Jueces Asociados señores Negrón García y Hernández Denton concurren sin opinión.  El Juez Asociado señor Rebollo López no intervino.


                                   Isabel Llompart Zeno
                                   Secretaria del Tribunal Supremo